NOT FOR PUBLICATION

RECEIVED
FEB 17 2012
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ernest HUGGARD, | |
| Plaintiff, | Civ. No. 11-6194 |
| v. | MEMORANDUM OPINION & ORDER |
| CROWN BANK and Jacinto RODRIGUES, | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter has come before the Court on Defendants Crown Bank and Jacinto Rodrigues' Motion to Dismiss [docket # 8] certain claims[1] for failure to state a claim upon which relief can be granted. In that Motion and subsequent reply brief [19], Defendants argue that Count I of Plaintiff's Complaint should be dismissed as Plaintiff has not pled factual matter sufficient to show that Crown Bank terminated his employment because of his father's disability, a required element for a claim of association discrimination under the ADA. (Defs.' Reply Br., at 1) [19]. With respect to Count III, Defendants contend that Plaintiff fails to state a plausible claim to relief under the NJLAD because he has not pled that Defendants sought to replace him with a person who was not associated with a disabled person, nor has he pled any facts that give rise to an inference of discrimination. (*Id.* at 5–7). Plaintiff opposes the Motion, contending that at this stage he has adequately pled circumstances that raise a reasonable inference that his

---

[1] Initially, Defendants moved to dismiss Count I (violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*), Count III (violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1, *et seq.*), and Count V (violation of the Paid Family Leave Act (PFLA), N.J.S.A. § 43:21-25, *et seq.*) as to both Crown Bank and Rodriguez. (Defs.' Br.). Defendants also moved for dismissal of Count IV (violation of the New Jersey Family Leave Act (NJFLA), N.J.S.A., § 34:11B-4, *et seq.*, as to Defendant Rodriquez. (*Id.*). In response, Plaintiff agreed to withdraw Count V (violation of the PFLA) as to both Defendants and Counts I (violation of the ADA), and IV (violation of the NJFLA) as it relates to Defendant Rodriguez. (Pl.'s Opp'n Br., at 1 n.1) [18]. However, Plaintiff opposes the dismissal of Count I (violation of the ADA) as to Defendant Crown Bank and Count III (violation of NJLAD) as it relates to both Defendants. (*Id.*).

1

father's disability was a determining factor in the decision to terminate him. (Pl.'s Opp'n Br., at 6). Furthermore, Plaintiff argues Defendants' Motion is premature because the parties have not yet engaged in discovery. (*Id.* at 5). For the reasons set forth below, the court finds that the appropriate course is to convert Defendants' Motion to Dismiss into a Motion for Summary Judgment and provide limited discovery for such purpose. *See* Fed. R. Civ. P. 12(b).

## I.   BACKGROUND

This matter arises out of Plaintiff Ernest Huggard's termination by his former employer, Crown Bank, following a three day absence from work, which Plaintiff took in order to care for his disabled father. For purposes of this motion the Court considers as true all of Plaintiff's well-pleaded factual allegations. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Plaintiff was employed by Crown Bank from May 2009 to June 2010. (Compl. ¶¶ 18–19) [1]. On or about April 16, 2010, Plaintiff requested three days off from work—June 16 to June 18, 2010—in order to take care of his ill father in Florida. (*Id.* ¶ 20). Plaintiff's father (now deceased) suffered from dementia and Parkinson's disease. (*Id.* ¶ 21). Plaintiff had previously requested leave to care for his father. (*Id.* ¶ 26).

During the week of June 7, 2010, Plaintiff had discussions with his supervisor, Defendant Jacinto Rodrigues, and several other employees of Crown Bank concerning the requested leave. (*Id.* ¶¶ 24–25). Plaintiff explained that he would be his father's primary caregiver during this period. (*Id.*).

On or about June 14, 2010, Plaintiff received an email from the human resources messaging system advising him that his request for leave had been denied. (*Id.* ¶ 27). In response, Plaintiff called Defendant Rodrigues and explained that the leave was necessary for Plaintiff to care for his father and he further claimed that the requested leave should be granted

under the FMLA. (*Id.* ¶¶ 29–30). Defendant Rodrigues responded that FMLA leave did not apply to this situation. (*Id.* ¶ 31). Defendant Rodrigues then asked Plaintiff if he was still planning on leaving to take care of his father. (*Id.*). Plaintiff responded that his father needed him. (*Id.* ¶ 32). Defendant Rodrigues then told Plaintiff that he (i.e., Defendant Rodrigues) would "have to do what [he] need[ed] to do." (*Id.* ¶ 33).

In spite of Defendants' pronouncements, Plaintiff went to Florida to care for his father. (*Id.* ¶ 34). During the days that Plaintiff was caring for his father, he continued to perform work for Defendant Crown Bank, including participation in some email and telephone exchanges. (*Id.*).

On June 18, 2010, Plaintiff was informed that he was suspended without pay. (*Id.* ¶ 35). Plaintiff requested that his accrued but unused vacation days be applied to the three day leave. (*Id.* ¶ 37). This request was denied. (*Id.*). Finally, on or about June 25, 2010, Defendants sent Plaintiff a letter advising him that his employment had been terminated. (*Id.* ¶ 38).

Based on these events, Plaintiff seeks relief against Crown Bank and Defendant Rodrigues under several statutes including the ADA and NJLAD on the basis of discrimination resulting from his association with a disabled person as well as the FMLA and the NJFLA for improperly denying him leave and for retaliating against him for seeking to take leave.

## II.   DISCUSSION

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-

pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler*, 578 F.3d at 210–11. But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

Ultimately, the issue on a Rule 12(b)(6) motion is not whether a plaintiff eventually will prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Dismissal under Rule 12(b)(6) . . . is limited to those instances where it is certain that no relief could be granted under *any* set of facts that could be proved." *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (emphasis added).

Defendant Crown Bank contends that it is entitled to a Rule 12(b)(6) dismissal because Plaintiff has not alleged facts sufficient to establish a plausible prima facie case under the ADA, particularly with regard to the ADA's infrequently litigated association provision.

Under 42 U.S.C. § 12112(b)(4), an employer is prohibited from discriminating against an employee as a result of "the known disability of an individual with whom [the employee] is known to have a relationship or association." However, "the association provision does not obligate employers to accommodate the schedule of an employee with a disabled relative."

4

*Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009). Although refusal to make reasonable accommodations may constitute illegal discrimination against a disabled employee, "the plain language of the ADA indicates that the accommodation requirement does not extend to *relatives* of the disabled." *Id.* (emphasis in original); *see also* 29 C.F.R. § 1630.8 ("It should be noted [ ] that an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities."); *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1084 (10th Cir. 1997) ("[T]he plain language of [§§12112(b)(5)(A) and (B)] – the only two provisions requiring 'reasonable accommodation' in Title I of the ADA – suggests that only job applicants or employees, but not their relatives or associates, need be reasonably accommodated."); *Larimer v. Int'l Bus. Machs.*, 370 F.3d 698, 700 (7th Cir. 2004) ("[T]he right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person."). Consequently, a plaintiff must show that the defendant was motivated by the disability rather than by the plaintiff's absence from work; in other words, that he would not have been fired if he had requested time off for a different reason. *See Erdman*, 582 F.3d at 510; *Den Hartog*, 129 F.3d at 1083 (recognizing that dismissal for absence or tardiness is not actionable "even if the reason for the absence or tardiness is to care for [a disabled relative]").

In analyzing employment discrimination claims brought pursuant to the ADA, courts generally apply the burden shifting analysis first proscribed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Reddinger v. Hosp. Cent. Servs.*, 4 F. Supp. 2d 405, 408 (E.D. Pa. 1998). Under this framework, a plaintiff must first make out a prima facie case of discrimination. Upon establishing a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's termination. *Id.*

5

In order to establish a prima facie case of association discrimination, a plaintiff must prove that: (1) he was in a protected class (i.e., an individual known to have an association or relationship with an individual who has a known disability); (2) he was discharged; (3) at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).

However, there is a genuine question of law as to when a plaintiff must establish his prima facie case. In employment discrimination cases, the Supreme Court of the United States has previously held that a plaintiff is not required to establish a prima facie case at the pleadings stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). While there is some question as to the applicability of *Swierkiewicz* post *Twombly* and *Iqbal, see Fowler*, 578 F.3d at 211–13, the United States Court of Appeals for the Third Circuit has noted that "the quantum of facts that a discrimination complaint should contain" continues to be a question ripe for further development. *See Guirguis v. Movers Specialty Servs.*, 346 F. App'x 774, 776 n.6 (3d Cir. 2009). This Court finds persuasive one court's analysis: "[r]econciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).

Particularly here, where the Court recognizes that "the *McDonnell Douglas* test is not easily adaptable to claims under the section of the ADA that permits causes of action for association discrimination[; i]t's a bit like a mean stepsister trying to push her big foot into one

6

of Cinderella's tiny glass slippers," *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 948 (2008), the Court believes further fact finding is appropriate. The Court notes the majority of cases cited by Defendants (i.e., *Stansberry*, *Erdman*, *Den Hartog*, and *Larimer*, *supra*) were decided on summary judgment and not on a motion to dismiss. Because many of the allegations in the Complaint require a context specific inquiry and necessitate the development of a factual record before the Court can decided whether, as a matter of law, Defendant Crown Bank could be held liable for association discrimination under the ADA, the Court believes a Motion to Dismiss may be an inappropriate vehicle to foreclose this claim.

Similarly, Defendants contention that Plaintiff has failed to state an association claim under the NJLAD[2] because of his failure to meet the fourth element of his prima facie case[3] is unavailing. (Defs.' Br., at 9). When it comes to determining what should be required, if anything, to constitute the fourth element of a plaintiff's prima facie case, courts have considerable discretion in determining whether such an element is absolutely necessary for a plaintiff to make out a case of discrimination. *See, e.g.*, *Viscik v. Fowler Equip. Co. Inc.*, 800 A.2d 826, 834 (N.J. 2002) (noting that "[t]he precise elements of a prima facie case must be tailored to the particular circumstances"); *Williams v. Pemberton Twp. Pub. Sch.*, 733 A.2d 571,

---

[2] In Count III, Plaintiff has alleged that he was discriminated against by Defendants under the NJLAD because of his association with a person with a disability. As an initial matter, Defendants note that it is unclear whether an association claim is even cognizable under the NJLAD, as NJLAD does not contain any association provision comparable to the ADA. (*See* Defs.' Br., at 8–9 (citing *Kennedy v. Chubb Group of Ins. Cos.*, 60 F. Supp. 2d 384, 395 (D.N.J. 1999) (dismissing an association claim asserted under the NJLAD and holding that "there is no indication that the New Jersey Supreme Court would endorse" the creation of such a claim)). A number of courts, however, have concluded that an association claim is cognizable under NJLAD. *See, e.g.*, *Downs v. U.S. Pipe & Foundry Co.*, 441 F. Supp. 2d 661 (D.N.J. 2006); *Pailleret v. Jersey Constr. Inc.*, No. 09-1325, 2011 WL 1485402, at *7 (D.N.J. Apr. 19, 2011) ("The NJLAD affords protection to both disabled persons as well as individuals associated with disabled persons.").

[3] Defendants argue that Plaintiff ignores *Pailleret* in which the court held that in order to state a prima facie association claim under the NJLAD, a plaintiff must prove that "the employer sought to, or did fill the position with a similarly-qualified person." (*See* Defs.' Reply Br., at 9 (citing *Paillert*, 2011 WL 1485402, at *10)). Plaintiff, by contrast, contends that the appropriate standard would require him to show "circumstances that give rise to an inference of discriminatory action." (Pl.'s Opp'n Br., at 10). Defendants argue that even under this standard Plaintiff's claim should be dismissed because Plaintiff alleges that Defendants learned of Plaintiff's father's disability at least a year prior to his termination, yet continued employing Plaintiff, which undermines any inference that Plaintiff's termination was motivated by his father's disability. (Defs.' Br., at 6).

578 (N.J. Super. Ct. App. Div. 1999) ("In light of the various contexts in which employment discrimination claims arise, we consider it unwise to require a plaintiff to establish unfailingly as part of the prima facie case that plaintiff was replaced by an individual outside the plaintiff's protected class[; t]he appropriate fourth element of a plaintiff's prima facie case requires a showing that the challenged employment decision (i.e., failure to hire, failure to promote, wrongful discharge) took place under circumstances that give rise to an inference of unlawful discrimination[; t]hat formulation permits a plaintiff to satisfy the fourth element in a variety of ways.").

Reviewing Plaintiff's Complaint in light of these principles, the Court finds that it would be inappropriate to dismiss these Counts at present. The plausibility standard of *Iqbal* does not require total certainty. Instead, it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. While Defendants have argued the temporal proximity of the events in this case is not unusually suggestive, the Court currently is without a record to determine whether "the proffered evidence, looked at as a whole, may suffice to raise the inference [of causation]." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007); *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof [of causation], such as actual antagonistic conduct or animus against the employee."). The Court concludes that limited discovery as well as additional briefing will assist with resolution of the pending Motion. Because on a motion to dismiss pursuant to Rule 12(b)(6), a court ordinarily cannot consider matters outside of the pleadings, the Court believes converting this Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56 is an appropriate use of its case management

authority. *See* Fed. R. Civ. P. 12(b)(6); *In re Rockefeller Ctr. Properties*, 184 F.3d 280, 287–89 (3d Cir. 1999) (discussing conversion of motions to dismiss into motions for summary judgment).

### III.   CONCLUSION

For the reasons set forth above,

IT IS on this 17th day of February, 2012,

ORDERED that the parties engage in limited discovery, as of the entry of this order, related to the issues presented in Defendants' converted Motion for Summary Judgment. Such discovery may include up to five (5) requests for the production of documents, up to five (5) interrogatories, up to ten (10) requests for admission, and up to four (4) depositions; and it is further

ORDERED that the parties submit simultaneous letter briefs, not to exceed seven (7) pages each, on April 16, 2012, addressing the Motion for Summary Judgment, in light of matters learned in the course of the discovery ordered above and any other subsequent developments.

_____
ANNE E. THOMPSON, U.S.D.J.

Date: February 17th, 2012